# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-20397-CIV-LENARD/GARBER

**DANNY TARANTINO,**

      Plaintiff,

vs.

**WILHELMINA FORD, EDMUND CAMPBELL, and FIDELITY AND DEPOSIT COMPANY OF MARYLAND,**

      Defendants.

_____/

## <u>ORDER ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE (D.E. 105) AND DENYING DEFENDANT FIDELITY AND DEPOSIT COMPANY OF MARYLAND'S MOTION TO DISMISS (D.E. 69)</u>

**THIS CAUSE** is before the Court on the Report and Recommendation of Magistrate Judge Barry L. Garber ("Report," D.E. 105), issued on May 18, 2009, recommending denial of Defendant Fidelity and Deposit Company of Maryland's ("Fidelity's") Motion to Dismiss the Second Amended Complaint ("Motion," D.E. 69)[1], filed on September 24, 2008.  On June 2, 2009, Fidelity filed objections to the Report ("Objections," D.E. 108).  Plaintiff Danny Tarantino ("Tarantino") filed a response to Fidelity's Objections on June 12, 2009 ("Response," D.E. 109), to which Fidelity filed a reply on June 19, 2009 ("Reply," D.E. 110).

 Based on a <u>de novo</u> review of the Motion, the Report, the Objections, the Response, the

---

[1]      Plaintiff filed a response to Fidelity's Motion to Dismiss on October 6, 2008 (D.E. 72), to which Fidelity filed a reply on October 15, 2008 (D.E. 73).

Reply, and the record, the Court finds as follows.

## I.    Background

This case involves a pro se lawsuit by a union member against two union officers for alleged violations of the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 501, et seq.  Plaintiff Tarantino is a member of the Miami Area Local ("MAL") of the American Postal Workers Union ("APWU") and brings this suit pursuant to section 501(b) of the LMRDA.  Tarantino's Second Amended Complaint ("Complaint," D.E. 62) alleges that Wilhelmina Ford ("Ford"), the union President, and Edmund Campbell ("Campbell"), the union Treasurer, breached various fiduciary duties in violation of section 501 of the LMRDA.  Specifically, the Complaint alleges that Ford and Campbell each unlawfully received eight hours of unearned overtime pay each week they were in office since approximately April 2004, Ford violated section 501 by intentionally hiding from union members that they were collecting unearned overtime, Ford improperly received a monthly car allotment of $350 since approximately April 2004, and Fidelity is liable for such damages pursuant to two surety bonds it issued to the union in connection with the bonding requirement of section 502(a).  (See Complaint at 6-8; D.E. 69-2, Bond No. 5890875-4; D.E. 69-3, Bond No. 5890875-5.)

Fidelity seeks to dismiss the Complaint for failure to state a claim upon which relief can be granted and argues that (1) Tarantino lacks standing to sue on the surety bonds issued to the union as he is neither an insured on the bonds nor statutorily entitled to bring a cause of action against the bond insurer and (2) Tarantino is unable to bring suit because he failed

2

to comply with the conditions precedent to suing on the bonds. (Motion at 3-4.) Specifically, Fidelity argues that because Tarantino is not a named insured on the bond he cannot bring suit. (Id at 3.) Fidelity also contends Tarantino cannot imply a statutory cause of action against the insurer of the surety bond where Congress explicitly created a cause of action against union officers in section 501(b) but did not provide any such avenue of relief against the insurer. (Objections at 6.) Fidelity is concerned that allowing union members to bring suit on the statutorily-required surety bond will expose sureties like Fidelity to a multitude of frivolous lawsuits. (Id. at 6-7.) Finally, Fidelity argues that Tarantino failed to comply with conditions precedent of the bond, namely that a proof of loss be filed with the insurer ninety days prior to filing suit. (Id. at 8.) Fidelity warns that union members must be required to comply with the conditions of the bond or else unions could simply evade their contractual obligations by instructing union members to bring suit. (Id. at 10.)

In response, Tarantino argues that a cause of action is implied from the interplay of §§ 501-502 of the LMRDA and points to several district court decisions having reached such a conclusion. (D.E. 72 at 3-4, 6-7.) It is Tarantino's position that complete and appropriate relief can only be obtained by joining the bond surety as a defendant and that logic dictates section 502 be read in light of section 501. (Id. at 6-7.) Tarantino also argues that a lack of actual knowledge of the bond conditions, along with his subsequent due diligence, excuse any non-compliance with the bond conditions. (Id. at 8.)

The Report recommends denial of Fidelity's Motion after noting courts have provided

3

"surprisingly little interpretation" of the law in this area.  (Report at 2.)  The Report first

concludes that Tarantino has standing to sue Fidelity based on the interplay between §§ 501-

502 of the LMRDA.  (Id. at 2-3.)  The Report adopts the reasoning of prior decisions in

finding that "'[i]n the typical 501 situation the union through its officers will not act against

its errant officers because either the officers empowered to act are the ones charged or are

at least close associates.  If it is preposterous to expect them to sue themselves, it follows that

it is equally unlikely to expect them to sue on a surety bond on which they defaulted.'"  (Id.

at 3 (quoting Purcell v. Keane, 277 F. Supp. 252, 258 (E.D. Pa. 1967).)  The Report then

concludes that equitable considerations preclude dismissing Tarantino's claims against

Fidelity due to non-compliance with the notice provisions of the bond.  (Report at 5.)  The

Report finds that Tarantino's diligence in pursuing his claims against Fidelity and his lack

of knowledge of the bonds' provisions exempted his non-compliance.  (Id. at 4-5.)  While

recognizing the potential for collusion between unions and its members in avoiding bond

conditions, the Magistrate Judge concluded there was no such collusion in this case.  (Id. at

5.)

Fidelity objects to the Report as it believes the Magistrate Judge erred in implying a

cause of action where Tarantino failed to allege he is an insured under the bonds and §§ 501-

502 of the LMRDA do not contain language giving Tarantino the right to sue on the bonds.

(Objections at 1.)  First, Fidelity argues that the Magistrate Judge erred by ignoring the lack

of statutory authority for a union member to bring suit against the bond insurer.  (Id. at 4-5.)

Fidelity argues that by granting union members the right to sue leadership under section 501 but not providing any similar provision in connection with section 502, Congress intended to exclude actions against the insurer. (Id. at 6.) Accordingly, the issue of whether or not to make a claim on the surety bonds was explicitly reserved for the union and not Tarantino. (Reply at 2.) Second, Fidelity claims the Magistrate Judge erred by relying upon two district court cases from other jurisdictions that were decided in an era when union abuses were widespread. (Objections at 5.) Rather, Fidelity asserts that Eleventh Circuit precedent precludes non-insureds from suing on surety bonds. (Id. at 7.) Finally, Fidelity claims the Magistrate Judge erred by excusing Tarantino's non-compliance with the notice provision and in effect expanded Fidelity's liability beyond the terms of the contract. (Id. at 8-10.) Because the Court finds the Report's analysis and conclusions sound, the Court holds that Tarantino does state a claim against Fidelity upon which relief may be granted.

## II.    Standard of Review

Pursuant to Federal Rule of Civil Procedure 12(b), a defendant may move for dismissal of a claim based on one or more of seven specific defenses, including failure to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss, the Court accepts the facts alleged in the complaint as true, and construes all reasonable inferences therefrom in the light most favorable to the plaintiff. O'Halloran v. First Union Nat'l Bank of Fla., 350 F.3d 1197, 1199 (11th Cir. 2003); Bank v. Pitt, 928 F.2d 1108, 1109 (11th Cir. 1991). To survive a motion under Rule 12(b)(6), a

claim need not contain detailed factual allegations, but must provide sufficient grounds to show more than a merely speculative entitlement to relief.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); United Techs. Corp. v. Mazer, 556 F.3d 1260, 1269-70 (11th Cir. 2009).

## III.    Discussion

### A.    Standing

The LMRDA employs several mechanisms for protecting labor unions from the effects of dishonest or fraudulent acts committed by union officers or employees.  Section 501(b) of the LMRDA confers a cause of action upon union members to sue on behalf of the union any officers who have violated their duties under section 501(a).  Section 501(b) provides in part that:

> When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization.

Further, section 502 of the LMRDA requires unions to bond any officers or employees who handle funds or other property.  Section 502(a) provides in part:

> Every officer, agent, shop steward, or other representative or employee of any labor organization (other than a labor organization whose property and annual financial receipts do not exceed $5,000 in value), or of a trust in which a labor organization is interested, who handles funds or other property thereof shall be

6

bonded to provide protection against loss by reason of acts or fraud or dishonesty on his part directly or through connivance with others.

Thus, the LMRDA provides both a cause of action and a financial safeguard to protect labor unions from the actions of dishonest employees.

Fidelity makes a compelling argument that union members lack standing to sue on a surety bond issued pursuant to section 502. The statute does not explicitly grant union members any cause of action against the bond surety. In fact, the statute does not explicitly provide anyone with a cause of action against the bond surety. Additionally, Tarantino is not a named insured on either of the bonds. One of the bonds names as insured "American Postal Workers Union, AFL-CIO; Its Local Unions and State Organizations as their respective interests may appear." (See D.E. 69-2, Bond No. 5890875-4.) The other bond names as insured "American Postal Workers Union, AFL-CIO; Its Local and State Affiliates & Retiree Chapters as their respective interests may appear." (See D.E. 69-3, Bond No. 5890875-5.)

Nonetheless, other courts faced with this exact situation have logically inferred such cause of action to exist. In Robinson v. Weir, 277 F. Supp. 581 (D. Neb. 1966), the United States District Court for Nebraska considered whether a union member suing a union officer under the LMRDA could also join the bond surety as a defendant and sue for the benefit of the union. After noting that no other cases had dealt with this precise issue, the court went on to examine sections 501-502 of the LMRDA. The district court first noted that section 502 "does not provide as to which party or parties will be entitled to sue on the bond" and

that "[i]t is true that under the bond in issue the plaintiff is not the named insured and may not, therefore, sue the surety for his own benefit."  Id. at 582.  Nonetheless, the court recognized that Congress intended the LMRDA to be broadly construed to effectuate its purpose.  Id. (citing Johnson v. Nelson, 325 F.2d 646 (8th Cir. 1963)).  As a result, the court concluded that:

> It is the conclusion of the Court that Congress intended that under § 501(b) a member should be entitled to sue for complete and appropriate relief, which would include not only suing the officer or representative but also the surety which has bonded that officer or representative.  Any other determination would not effectuate the purpose of the Act and would require a multiplicity of suits in order to insure that the members would receive complete and appropriate relief and that they would be properly protected.  It is the decision of the Court that under Title 29 U.S.C.A. § 501(b) a member who is suing an officer, agent, shop steward, or other representative may also join as a defendant and sue for the benefit of the organization the surety which has bonded that officer, agent, shop steward, or representative pursuant to § 502 of Title 29 U.S.C.A.

Id.

In Purcell, the District Court for the Eastern District of Pennsylvania considered the same issue presented in Robinson and in this case.  277 F. Supp. 252.  The defendant bond issuer in Purcell argued a lack of statutory authority to join it as a defendant in a section 501 action, as Fidelity argues in this case.  The district court agreed with the conclusion reached in Robinson and further stated:

> The purpose of section 501(b) is to permit individual union members to proceed on behalf of their union when the union officers who normally have this responsibility will not act.  Section 502 must be read in light of section 501.  In the typical 501 situation the union through its officers will not act against its errant officers because either the officers empowered to act are the

8

ones charged or are at least close associates.  If it is preposterous to expect
them to sue themselves, it follows that it is equally unlikely to expect them to
sue on a surety bond on which they defaulted.

Id. at 257-58; see also Giordani v. Hoffmann, 295 F. Supp. 463, 476-77 (E.D. Pa. 1969)

(applying the rationale of Robinson and Purcell to permit suit against a bonding company in

action pursuant to 29 U.S.C. § 302).

The Court agrees with the Magistrate Judge's conclusion that "[w]hile these decisions

are not binding, the logic is sound, and the Court has been unable to find, and Fidelity has

failed to point to, any case that has rejected this reasoning."  (Report at 3.)  First, while

section 502 does not explicitly provide for a cause of action against the bond surety, the

interplay between section 501 and 502 demonstrates Congressional intent to protect unions

by providing not only a cause of action against dishonest officers but also a method of

remedying any financial loss.  To hold that no cause of action exists against the bond surety

would contradict the intent of the statute that unions be financially protected from the

conduct and control of errant officers.  The Court finds persuasive the reasoning of the court

in Purcell that "[i]f it is preposterous to expect [union officers] to sue themselves, it follows

that it is equally unlikely to expect them to sue on a surety bond on which they defaulted."

277 F. Supp. at 258.

In contrast, Fidelity's attempt to distinguish this case from those cited by the

Magistrate Judge is unpersuasive.  First, Fidelity distinguishes the cases cited by the

Magistrate Judge as "district court cases from other jurisdictions issued in the 1960's, an era

when union abuses were widespread." (Objections at 5.)  While the cases cited above are indeed old and from non-binding jurisdictions, they are exactly on point as to the issues presented and display sound reasoning.  Fidelity has not cited any cases similarly addressing these very issues and the Court's own research has not provided any other such guidance. Fidelity cites to Eleventh Circuit case law analyzing surety bonds but cannot point to any cases addressing such claims under the LMRDA.

Instead, Fidelity cites to Everhart v. Drake Management, Inc., 627 F.2d 686 (5th Cir. 1980) and American Empire Insurance Company of South Dakota v. Fidelity and Deposit Company of Maryland, 408 F.2d 72 (5th Cir. 1969), for the proposition that only a named insured can recover under a surety bond in the Eleventh Circuit.[2]  However, neither case involved a bond issued pursuant to section 502 of the LMRDA or any other statute.  Further, both cases involved questions of whether third-party beneficiaries could themselves benefit from suing the surety.  In this case, Tarantino is suing Fidelity on behalf of the union and for the benefit of the union.  Rather than create unforeseen liability on the part of the surety, allowing a union member to join the surety as a defendant in an LMRDA action simply avoids multiple lawsuits and ensures appropriate relief.  Therefore, the Court concludes that a union member suing an union officer or employee under section 501 of the LMRDA may also join as a defendant the surety of the bond issued pursuant to section 502.

---

[2]     The Eleventh Circuit in Bonner v. City of Prichard, 661 F.2d 1206, 1207 (1981) (en banc), adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

10

### B.      Failure to Comply with Conditions Precedent

Both bonds issued by Fidelity require that: "[u]pon knowledge or discovery of loss under this bond, the Insured shall: (a) give notice thereof as soon as practicable to the Underwriter and (b) file detailed proof of loss, duly sworn to, with the Underwriter within four months after the discovery of loss" and "[n]o action shall lie against the Underwriter unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this bond, nor until ninety days after the required proofs of loss have been filed with the Underwriter, nor at all unless commenced within one year from the date when the Insured discovers the loss." (See D.E. 69-2, Bond No. 5890875-4; D.E. 69-3, Bond No. 5890875-5.) Tarantino does not allege in the Complaint that he submitted written proofs of loss or otherwise complied with the notice requirement as a condition precedent to filing to suit.[3] Nonetheless, the Report concludes that Tarantino was diligent in his efforts to uncover the terms of the bonds and join Fidelity as a defendant, and as a result, equitable considerations excuse non-compliance with the conditions precedent. (Report at 4-5.) The Court agrees.

Fidelity objects that Tarantino did not in fact exercise due diligence in pursuing his claims against Fidelity. The Eleventh Circuit's decision in Erkin v. Bryant, 785 F.2d 1538 (11th Cir. 1986) provides some guidance on this issue. The plaintiff union members in Erkin

---

[3]      Tarantino subsequently claims that he has in fact complied with the conditions precedent to filing suit under the surety bond by notifying the MAL of the various violations. (Response at 2.) Because the Court ultimately concludes that his lack of knowledge of the terms of the bonds excuses his non-compliance with the notice provisions and from alleging such facts in his Complaint, the issue of whether Tarantino actually complied with Section 5 of either bond need not be addressed.

filed suit under the LMRDA against local union officers who received payments as part of a strike fund.  Id. at 1540-41.  Despite learning of the surety bond approximately one month into the lawsuit, the plaintiffs in Erkin waited three years to join the surety as a defendant. Id. at 1549.  The surety contested the lawsuit on the grounds that the plaintiffs had failed to comply with the notice and claim provisions of the bond contract.  Id.  After briefly discussing the decisions in Purcell and Giordani (without mention of the issue of standing), the Eleventh Circuit distinguished the facts of the instant case by illustrating the prejudicial delay that had occurred in joining the surety as defendant.  Id. ("Although Giordani and Purcell allowed claims in spite of failure to comply with the bond provisions, those cases are not controlling here....Here, plaintiffs delayed for three years after they received actual knowledge of the bond's existence; during that time, they never inquired as to the bond's provisions.").  The court concluded that the plaintiffs' claims were "barred for lack of due diligence."  Id.

However, as the Report notes, the facts "demonstrate [Tarantino] diligently pursued his claim against Fidelity."  (Report at 4.)  Tarantino joined Fidelity as a defendant shortly after the Magistrate Judge granted his motion to compel discovery of the identity of the bonding company and copies of the bonds at issue.  (Id.; D.E. 49, 57.)  Unlike the circumstances in Erkin, Fidelity has not been prejudiced by a three-year delay or the failure to contest standing.  The record indicates Tarantino did not have knowledge or notice of the bond provisions until his discovery requests were granted and that he promptly acted to join

Fidelity as a defendant.   Tarantino also attaches several examples of correspondence indicating that after he received copies of the bonds he attempted to have the union comply with the notice conditions.  (See Response at 19-21.)  The Court agrees with the Report that Tarantino exercised due diligence in pursuing his claim against Fidelity and thus the facts of this case are distinguishable from those in Erkin.

Fidelity also objects that allowing non-compliance with the notice provision of the bond unfairly expands Fidelity's liability.  In support of its argument, Fidelity argues the bonds are "fidelity bonds" and should thus be treated as insurance policies.  In concluding the bond at issue in this case is uncharacteristic of a typical insurance policy, the Report finds persuasive Irving Trust Company v. Nationwide Leisure Corporation, 95 F.R.D. 51 (S.D.N.Y. 1982), a case which expressly distinguished insurance contracts from surety bonds mandated by federal statute.  Irving Trust involved an action by tour participants against the operator of the tour and its surety for alleged failure to deliver promised accommodations and travel arrangements.  The travel operator's surety issued a $200,000 surety bond as required by federal regulations governing tour operators.  In comparing the statutorily-required bond and a normal insurance contract, the court in Irving Trust determined "[t]he Bond is not like an insurance contract, because an insurance contract, such as those dealt with in the cases cited to the court, is a signed agreement by the party sought to be charged with the condition precedent."  Id. at 67.  The court went on to say, "[t]hus, even assuming, contrary to the established rule, that a bond can set up a condition precedent against third-parties for whose

13

benefit the bond was taken out, the condition precedent will be unenforceable unless those third-parties had knowledge of it." Id. Similarly, the Court finds that the surety bond issued pursuant to the LMRDA in this case does not fall within the scope of a routine insurance policy and thus is distinguishable from those cases cited by Fidelity.

The Court further notes that Giordani and Purcell support the proposition that union members need not provide notice to the surety in strict compliance with the bond in order to recover under such bond on behalf of the union.  See Giordani, 295 F. Supp. at 477 ("As to notice to the surety company where it is apparent in a 501 situation, as it is under the circumstances involved here, that the individual members plaintiff [sic] had no actual knowledge of the provisions of the surety contract, they will not be charged with the duty of giving notice to the surety company in accordance with the provisions of the insurance policy.") (quoting Purcell, 277 F. Supp. at 258).

Finally, the Report acknowledges the possibility of collusion between labor unions and their members but finds there is no such collusion in this case.  The Report states:

> Lastly, Fidelity makes the point that if union members were not subject to the bond's condition precedent, the union could easily avoid the bond's notice provisions by using a member to sue rather than suing directly.  Admittedly this is a real potential.  The Court, however, is comforted by the fact that, clearly, there is no such collusion in this instance.

(Report at 5.)  The Court agrees and finds that the risk of collusion is minimal.  While unions could conceivably attempt to avoid the conditions precedent to filing suit under the surety bond, the greater risk lies in union officers acting to the detriment of the union by failing to

14

sue on a surety bond on which they defaulted. Accepting the factual allegations contained in the Complaint as true, Tarantino has alleged sufficient facts to state a claim against Fidelity upon which relief may be granted. Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

1.  The Report and Recommendation of Magistrate Judge Barry L. Garber (D.E. 105), issued on May 18, 2009, is **ADOPTED** consistent with this Order.

2.  Defendant Fidelity's Motion to Dismiss the Second Amended Complaint (D.E. 69), filed on September 24, 2008, is **DENIED**.

3.  Defendant Fidelity shall have twenty days from the date of this Order to file an Answer to Plaintiff's Second Amended Complaint.

4.  Plaintiff's Motion for Clarification of the Report and Recommendation (D.E. 105), filed on June 1, 2009, is **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 7th day of August, 2009.

**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**